Gamaliel C. St. John, as Executor of and Trustee under the Will of Wallace C. Andrews, Deceased, Respondent, v. The Andrews Institute for Girls et al., Respondents, and Smithsonian Institution et al., Appellants.

1. Will — Gift to Charitable Corporation to Be Created After Death of Testator. A testator may by will devise and bequeath property to a corporation to be formed after his death if it is therein provided that such corporation shall be so formed and the property vest in it within a period not longer than the lives of two persons in being at the time of the execution of the instrument, since there is no reason why property cannot be given to such a corporation and within the restricted period any more than there is why property should not be given to descendants or other persons thereafter to be born. In determining the legality of the gift there is no distinction between a natural person thereafter to be born and an artificial person thereafter to be organized.

2. Same — Validity of Gift to Charitable Corporation to Be Created After Testator's Death under Directions Contained in Will. A testator residing in this state, who had a wife but no child or parent living, after providing for certain legacies, gave the residue of his estate to his executor, his wife's brother, and his executrix, his wife, in trust to collect and receive the rents, income and profits thereof, and pay the same to his wife during her natural life. Upon her death he devised and bequeathed all of said residue, in excess of a certain sum, which was specifically bequeathed, to a corporation which he directed his said executor and executrix, as soon as practicable after his decease and during the lives of his said executor and executrix or the life of the longest liver of them, to procure to be organized under and in conformity with the laws of the state of Ohio for the purpose of establishing and maintaining a school for the free education of girls, and further provided that, if his wife should die before himself, the gift to said corporation should take effect upon his death. Testator and his wife perished in a fire which destroyed the house in which they lived so that it cannot be ascertained which of them was the survivor. Subsequent to the death of testator and his wife, the surviving executor of the testator procured an incorporation to be formed under the laws of the state of Ohio, entitled "The Andrews Institute for Girls," which corporation, the trial court has found, has capacity under the laws of the state of Ohio to take the gift in question, and has also found that the provisions of testator's will, relating to said gift, were at the time of testator's death valid under the laws of the state of Ohio. Held, that, under the laws of this state, the gift to the corporation to be created was valid and that "The Andrews Institute for Girls," the corporation created in accordance with the provisions of the

will of testator and for the purpose of carrying out his charitable scheme, is entitled to take and hold the residuary estate of testator.

3. Same — Validity of Such Gift Not Affected by Simultaneous Death of Testator and His Wife. The fact that the testator and his wife died at the same time so that, at the time of her death there was no corporation in existence to take the gift, does not affect the validity thereof or cause it tô fail, where there is nothing in the will which shows that the testator necessarily expected that the proposed corporation would be formed during the lifetime of his wife; but every statement in the will shows that he contemplated that the corporation be formed "as soon as practicable after my (his) decease." The gift was to the corporation "hereinafter directed to be formed." The corporation could have been formed during the life of testator's wife, if she had survived her husband, in which case the gift would have been one *in præsenti* to take effect upon her death, but as the testator's wife did not survive him and the corporation could not be formed except under the directions contained in the testator's will, it is necessarily a gift *in futuro* to take effect upon the formation of such corporation, and that corporation having been organized by the surviving executor "as soon as practicable" after the death of the testator, the gift is valid and the corporation is entitled to take and hold the same.

4. Same — Validity of Statute Alleged to Have Been Passed in Aid of Corporation to Be Created under Testator's Will — Constitutionality Thereof. After the death of the testator and a short time before the incorporation of the Andrews Institute for Girls an act was passed by the general assembly of the state of Ohio entitled " An act to provide for the administration of charitable institutions," and it is now contended that the act was passed to aid in the incorporation of the Andrews Institute for Girls and that the act and, consequently, the formation of such corporation are violative of the provisions of the Constitution of the State of Ohio (Const. of Ohio, art. 13, § 1), which prohibits the passing of special acts conferring corporate powers. Assuming that the Andrews Institute was not incorporated under the general laws of the State of Ohio, which authorize the formation of such corporations, and that the act in question was passed to aid in the incorporation of said institute, it is not necessarily unconstitutional for that reason. The fact that a general act passed for a general purpose may aid a particular person for the time being does not make the act special as distinguished from a general act, and if the act relates to persons, places and things as a class and is neither local nor temporary, the mere fact that its practical effect is special or private does not necessarily prove that it violates constitutional provisions against special legislation.

5. Will — Restriction upon Gifts to Charitable Institutions — L. 1860, Ch. 360 — Death of Husband and Wife by Common Disaster. The provisions of the statute (L. 1860, ch. 360) forbidding any person hav-

ing a husband, wife, parent or child, by his or her last will and testament, to devise or bequeath to any charitable, or similar, association or corporation, in trust or otherwise, more than one-half part of his or her estate after the payment of his or her debts, and providing that any such devise or bequest shall be valid to the extent of one-half of his or her estate, and no more, relate to the time of the death of the person making such will, not to the time of the execution thereof, and hence the statute has no application to the gift in question, since the trial court has found as a fact that as between testator and his wife survivorship is unascertainable. There is no presumption of survivorship when persons perish by a common disaster, in the absence of proof tending to show the order of dissolution, and as the testator and his wife perished together, there was no point of time when his title was divested at which she could have taken it, and in construing such statute her simultaneous death is, in effect, the same as a death before his death.

6. STATUTES PROHIBITING ACCUMULATION OF INCOME DURING CONTINUANCE OF EXPECTANT ESTATE — REAL PROPERTY LAW (L. 1896, CH. 547), §§ 51, 53 — PERSONAL PROPERTY LAW (L. 1897, CH. 417), §§ 2, 4 — NOT ABROGATED BY LAWS 1893, CH. 701, AS AMENDED BY LAWS 1901, CH. 291. The provisions of the statutes (Real Property Law, L. 1896, ch. 547, §§ 51, 53; Personal Property Law, L. 1897, ch. 417, §§ 2, 4) which prohibit the suspension of the power of alienation, or of absolute owership, of real and personal property for a period longer than two lives in being, also provide that the rents, profits and income of an expectant estate shall not be accumulated during the continuance of such estate, except for the benefit of infants in being at the time of the creation of such estate, and such provisions have not been abrogated as to gifts to charitable, or similar, uses by the statute (L. 1893, ch. 701, as amd. by L. 1901, ch. 291) which provides that gifts shall not be deemed invalid by reason of the uncertainty of the persons designated as the beneficiaries thereof and giving the Supreme Court control over such gifts.

7. ACCUMULATION OF INCOME — NEXT EVENTUAL ESTATE. Under the provisions of the statute (Real Property Law, § 53) the income on the residuary fund left by the testator could not be accumulated during the interval between his death and the incorporation of the Andrews Institute for Girls for the benefit of that corporation, and as there is no provision in his will expressly giving and bequeathing it, the provisions of the statute apply thereto and it must be paid, as in the statute directed, "to the persons entitled to the next eventual estate." The persons entitled to the next eventual estate are the persons entitled to the estate upon the happening of the event which terminates the period of accumulation, and that event, in this case, was the formation of the Andrews Institute for Girls, and the person entitled to the estate on the happening of the event is said institute, but it could not anticipate the event which was to terminate the accumulation, because it was not in

existence, and, therefore, it is not capable of receiving such income, since the delay in the incorporation of said institute was not merely incidental and fortuitous, as where a fund is vested in a corporation and only the possession is temporarily and incidentally withheld, but was a delay by which the gift became a future estate which could not vest until the institute came into being.

8. ACCUMULATED INCOME — WHEN ALTERNATIVE LEGATEE NOT A RESIDUARY LEGATEE AND, THEREFORE, NOT THE OWNER OF THE NEXT EVENTUAL ESTATE ENTITLED TO ACCUMULATED INCOME. Where the only provision of testator's will relating to his residuary estate, in case the gift to the Andrews Institute for Girls should be invalid, was a provision that if his intention with respect to said institute should "because of illegality fail, or become impossible of realization," then and in that event he devised and bequeathed the sum intended for it to the Smithsonian Institution at Washington, D. C., to be devoted to the purpose for which it was established, the latter institution is not a residuary legatee, since the gift to it is an alternative gift dependent upon the gift to the Andrews Institute failing because of illegality or because the intention of the testator with respect to said institute became impossible of realization, but the proposed incorporation is not, and never was illegal, and could not, therefore, fail for illegality; neither was it ever impossible of realization, and hence the Smithsonian Institution is not, and never was, presumptively entitled to the next eventual estate, and cannot, therefore, take the accumulated income of testator's residuary estate.

9. SAME — NEXT OF KIN ENTITLED TO ACCUMULATED INCOME IN ABSENCE OF ANY TESTAMENTARY PROVISION DISPOSING THEREOF UPON INABILITY OF OWNER OF EXPECTANT ESTATE TO RECEIVE IT. Neither the Andrews Institute for Girls nor the Smithsonian Institution can take such accumulated income, and hence the testator has failed, having made no other disposition thereof, to give and bequeath such income to a person or persons capable of receiving it, and it passes, therefore, to testator's next of kin under the Statute of Distributions.

*St. John* v. *Andrews Institute,* 117 App. Div. 698, modified.

(Argued January 15, 1908; decided February 25, 1908.)

APPEAL from a judgment of the Appellate Division of Supreme Court in the first judicial department, entered April 12, 1907, which affirmed a judgment of Special Term construing the will of Wallace C. Andrews, deceased.

The facts, so far as material, are stated in the opinion.

*Frank W. Hackett* and *Edmund Wetmore* for Smithsonian Institution, appellant. The bequest to the corporation was to

17

take effect upon the death of Mrs. Andrews. When Mrs. Andrews died there was no corporation in existence. The gift, therefore, fails. (*Doe* v. *Nowell*, 1 M. & S. 327; *Moore* v. *Lyon*, 25 Wend. 144; *Mapes* v. *Society*, 33 Hun, 362; *Burrill* v. *Boardman*, 44 N. Y. 258; *People* v. *Simonson*, 126 N. Y. 299; *Inglis* v. *Trustees, etc.*, 3 Pet. 152; *Lynes* v. *Townsend*, 33 N. Y. 558; *Devon* v. *Miller*, 5 T. R. 558; *Doe* v. *Dring*, 2 M. & S. 448.) The attempted gift of more than one-half of his estate was illegal. (L. 1860, ch. 360; *McKeon* v. *Officer*, 6 N. Y. S. R. 203; *Allen* v. *Stevens*, 161 N. Y. 123; *Stephenson* v. *Short*, 92 N. Y. 433; *Robb* v. *W. & J. College*, 103 App. Div. 327; *Amherst College* v. *Ritch*, 151 N. Y. 282; *Matter of Walker*, 136 N. Y. 20; *Chamberlain* v. *Chamberlain*, 3 Lans. 348, 374; 43 N. Y. 424; *Henriques* v. *Sterling*, 26 App. Div. 30; *Carroll* v. *Carroll*, 16 How. [U. S.] 275.) The so-called Andrews Institute for Girls has no legal existence. (*Gentsch* v. *State*, 71 Ohio St. 165; *Platt* v. *Craig*, 66 Ohio St. 75; *Wetmore* v. *Parker*, 52 N. Y. 451; *Bird* v. *Merklee*, 144 N. Y. 550; *Smith* v. *H. R. F. Society*, 90 N. Y. Supp. 178; *State* v. *Hibbs*, 38 Ohio St. 199.)

*Harold Nathan* for Norman C. Andrews et al., appellants. The next of kin are entitled to the income which accrued after the death of the testator and before the incorporation of the Andrews Institute. (*Morris* v. *Sickly*, 133 N. Y. 456; *Holmes* v. *Mead*, 52 N. Y. 332; *Booth* v. *Baptist Church*, 126 N. Y. 215; *Burrill* v. *Boardman*, 43 N. Y. 254; *People* v. *Simonson*, 126 N. Y. 299; *Shipman* v. *Rollins*, 98 N. Y. 311; *Inglis* v. *Trustees, etc.*, 3 Pet. 144; *Cochran* v. *Schell*, 140 N. Y. 516; *Townsend's Estate*, L. R. [34 Ch. Div.] 357; *Bective* v. *Hodgson*, 10 H. L. Cas. 656.) The testator, being a married man, could not devise or bequeath more than one-half of his estate to a charitable corporation. (*Robb* v. *W. & J. College*, 185 N. Y. 485; *Harris* v. *A. B. Society*, 2 Abb. Ct. App. Dec. 316; *Jones* v. *Kelly*, 63 App. Div. 614; 170 N. Y. 401; *Rich* v. *Tiffany*, 2 App. Div. 25; *Matter of*

*Stilson*, 85 App. Div. 132; *Matter of Fox*, 52 N. Y. 593; *Amherst College* v. *Ritch*, 151 N. Y. 334; *Chamberlain* v. *Chamberlain*, 43 N. Y. 440; *McKeown* v. *Officer*, 25 N. Y. S. R. 319; *Scott* v. *Ives*, 22 Misc. Rep. 749.) The alternative or substituted gift to the Smithsonian Institution did not take effect. (*Matter of Disney*, 190 N. Y. 128; *Bender* v. *Dietrick*, 2 W. & S. 284; *Stewart's Estate*, 147 Penn. St. 383; *Lynes* v. *Townsend*, 33 N. Y. 558; *Quinn* v. *Hardenbrook*, 54 N. Y. 83; *Scott* v. *Guernsey*, 48 N. Y. 106; *Robb* v. *W. & J. College*, 185 N. Y. 485; *Matter of Walker*, 136 N. Y. 20; *Leggett* v. *Stevens*, 185 N. Y. 70; *C. T. Co.* v. *Egleston*, 185 N. Y. 23; *Herzog* v. *T. G. & T. Co.*, 177 N. Y. 86; *Brown* v. *Quintard*, 177 N. Y. 75.)

*Henry M. Earle* for Edith A. Logan, appellant. The Laws of 1860, chapter 360, prevented the testator (who had a wife) from devising or bequeathing more than half of his property to any charitable corporation. (*Robb* v. *W. & J. College*, 103 App. Div. 327; 185 N. Y. 485; *Scott* v. *Ives*, 22 Misc. Rep. 749; *Chamberlain* v. *Chamberlain*, 43 N. Y. 440; *Gallagher* v. *Crooks*, 132 N. Y. 338; *People's Trust Co.*, v. *Flynn*, 188 N. Y. 385; *Chamberlain* v. *Taylor*, 105 N. Y. 185.) The devise to the Smithsonian Institution is merely alternative, and under the provisions of the will does not take effect. (*Chamberlain* v. *Chamberlain*, 43 N. Y. 424.) The Andrews Institute was not in being at the time of the death of the testator's wife; therefore the income prior to its incorporation is the property of the next of kin. (*People* v. *Simonson*, 126 N. Y. 307; *Inglis* v. *S. S. Harbor*, 3 Pet. 99; *Thorn* v. *De Breteuil*, 179 N. Y. 64; *Hascall* v. *King*, 162 N. Y. 134; *U. S. T. Co.* v. *Soher*, 178 N. Y. 442; *Catt* v. *Catt*, 118 App. Div. 742.)

*Ferdinand Shack* for Julia A. Bruce, appellant. The testator has offended against the act of 1860 by devising and bequeathing more than one-half of his estate to a charitable corporation. (*McKeown* v. *Officer*, 25 N. Y. S. R. 319;

*Harris* v. *A. B. Society*, 4 Abb. [N. S.] 428.; *Robb* v. *W. & J. 'College*, 103 App. Div. 327; *Matter of Camp*, 91 Fed. Rep. 745; *Cohens* v. *Virginia*, 6 Wheat. 264; *Newell* v. *Nichols*, 75 N. Y. 78; *Chamberlain* v. *Chamberlain*, 43 N. Y. 440.) There is an intestacy down to the time of the creation of the Andrews Institute as to the income of the property left to thát institution. (Thomas on Estates, 513; *Vail* v. *Vail*, 4 Paige, 317.)

*James W. Hawes* and *William N. Cohen* for plaintiff, respondent. The act of 1860 does not apply. (*Amherst College* v. *Ritch*, 151 N. Y. 282; *Allen* v. *Stevens*, 33 App. Div. 485; *Matter of Walker*, 136 N. Y. 20; *Henriques* v. *Sterling*, 26 App. Div. 30; *Chamberlain* v. *Chamberlain*, 3 Lans. 348; *Harris* v. *A. B. H. M. Society*, 33 Hun, 411; *Lefevre* v. *Lefevre*, 59 N. Y. 434; *Reynolds* v. *Bristow*, 37 Ga. 283; *Wiley* v. *Smith*, 3 Ga. 551; *Newton* v. *Griffith*, 1 H. & G. 111.) The rents and income between the death of the testator and the formation of the Ohio corporation do not go to the heirs or next of kin, but to the residuary legatee of the principal, as an incident thereof, or because such legatee is presumptively entitled to the next eventual estate. (*Matter of Graves*, 171 N. Y. 40; *Matter of Baby*, 1 Connolly 317; *Moncrief* v. *Ross*, 50 N. Y. 431; *Cruikshank* v. *Home for the Friendless*, 113 N. Y. 337; *Lent* v. *Howard*, 89 N. Y. 169; *Wright* v. *Trustees*, Hoff. Ch. 201; *Betts* v. *Betts*, 4 Abb. [N. C.] 317; *Cochrane* v. *Schell*, 140 N. Y. 516; *Cushman* v. *Horton*, 59 N. Y. 149; *Siebert* v. *Miller*, 34 App. Div. 602.) The residuary clauses are valid. (*Burrill* v. *Boardman*, 43 N. Y. 254; *Inglis* v. *Trustees, etc.*, 3 Pet. 99; *Tilden* v. *Green*, 130 N. Y. 29; *Jessup* v. *P. M. Home*, 27 Misc. Rep. 427; *Draper* v. *Harvard College*, 57 How. Pr. 269; *Matter of Bullock*, 6 Dem. 335; *Chamberlain* v. *Chamberlain*, 43 N. Y. 424; *Matter of Wolf*, 25 Misc. Rep. 469; *Hope* v. *Brewer*, 136 N. Y. 126; *Matter of Huss*, 126 N. Y. 537; *C. U. Society* v. *Hale*, 29 App. Div. 396; *Matter of Sturgis*, 164 N. Y. 485.)

*Henry Wollman* and *Virgil P. Kline* for Andrews Institute for Girls, defendant, respondent. The gift to the Andrews Institute for Girls is valid. (*Burrill* v. *Boardman*, 43 N. Y. 254; *Trustees* v. *Z. C. & M. Co.*, 9 Ohio, 203; *Tilden* v. *Green*, 130 N. Y. 29; *Inglis* v. *Trustees, etc.*, 3 Pet. 99; *Cruikshank* v. *Home for Friendless*, 113 N. Y. 337; *People* v. *Simonson*, 126 N. Y. 299; *Allen* v. *Stevens*, 161 N. Y. 122; *Ould* v. *Washington Hospital*, 95 U. S. 303.) The statute of 1860 applies only to a person who leaves a wife etc., surviving him. (*Hollis* v. *D. T. Seminary*, 95 N. Y. 166; *Chamberlain* v. *Chamberlain*, 43 N. Y. 424; *Amherst College* v. *Ritch*, 151 N. Y. 282; *Allen* v. *Stevens*, 161 N. Y. 122; *Robb* v. *W. & J. College*, 185 N. Y. 485; *Harris* v. *A. B. H. M. Soc.*, 33 Hun, 411; *Lefevre* v. *Lefevre*, 59 N. Y. 434; *Matter of Walker*, 136 N. Y. 20; *Henriques* v. *Sterling*, 26 App. Div. 30; *Wiley* v. *Smith*, 3 Ga. 551; *Newton* v. *Griffith*, 1 H. & G. [Md.] 111.) The statute of 1860 does not prohibit a gift to a charitable corporation to be formed after the death of the testator. (*Allen* v. *Stevens*, 161 N. Y. 122; *Robb* v. *W. & J. College*, 185 N. Y. 485; *Burrill* v. *Boardman*, 43 N. Y. 254; *Matter of Crane*, 12 App. Div. 271.) The gift to the Andrews Institute is valid under the decisions in Ohio, where the institution is to be located. (*Trustees* v. *Z. C. & M. Co.*, 9 Ohio, 203; *Landis* v. *Wooden*, 1 Ohio St. 160; *Sowers* v. *Cyrenius*, 39 Ohio St. 29.) The Andrews Institute is entitled to the income. (*Hendricks* v. *Hendricks*, 3 App. Div. 604; 154 N. Y. 751; *Duncklee* v. *Butler*, 38 App. Div. 99; *Allen* v. *Stevens*, 161 N. Y. 122; *Matter of Griffin*, 167 N. Y. 71; *Bowman* v. *D. & F. M. Society*, 182 N. Y. 494; *Odell* v. *Odell*, 10 Allen, 1; *Wardens, etc.*, v. *Attorney-General*, 164 Mass. 263; *Duggan* v. *Slocum*, 92 Fed. Rep. 806; *Shotwell* v. *Mott*, 2 Sandf. Ch. 46.) The incorporation of the Andrews Institute for Girls is legal and valid. (*Platt* v. *Craig*, 66 Ohio St. 75; *State ex rel.* v. *Spellmire*, 67 Ohio St. 79; *C. S. R. Co.* v. *Horstman*, 72 Ohio St. 93.)

*William S. Jackson, Attorney-General (John D. Lynn* of counsel), for the State of New York.   The policy of the state of New York is to uphold bequests for charitable purposes provided for in the wills of citizens of this state.   (*Hollis* v. *D. T. Sem.*, 95 N. Y. 166.)   In bequests to foreign charitable corporations the rule is to sustain such as are legal in the locus of the beneficiary or place where the trust is to be administered.   (*Matter of Sturgis*, 163 N. Y. 485.)   The gift to the Andrews Institute is valid in Ohio, where the trust is to be discharged.   (*Sowers* v. *Cyrenius*, 39 Ohio St., 29.)

*Herbert H. Gibbs* for G. C. St. John, individually and as executor of Margaret M. S. Andrews, deceased, and as administrator of Georgie B. St. John, deceased, defendant, respondent.

Chase, J.   Wallace C. Andrews made his will November 12, 1891.   He died April 7th, 1899, a resident of the county and state of New York, where his will was duly probated on the 22nd day of May, 1899, and letters testamentary were thereupon issued to the plaintiff.   This action is brought to procure a construction of said will and to have the rights of the parties thereunder declared.   The judgment rendered herein at the Special Term has been unanimously affirmed by the Appellate Division, and there is no contention in this court about the facts as found at the Special Term.

The testator by his will gives certain general legacies.   He then gives all the rest and residue of his estate to his executor and executrix in trust " to collect and receive the rents, issues, income and profits thereof and pay them over from time to time to my (his) wife   *   *   *   for her own use for and during her natural life and upon her death to dispose of my (his) said residuary estate as hereinafter (thereinafter) provided."

Upon the death of his wife he devised and bequeathed the sum of five hundred thousand dollars if his estate should exceed that sum, and if it should not exceed that sum, then

his entire estate as by his will specifically directed. The following five paragraphs of the will are each important in the consideration of the questions which we will herein discuss, viz. :

"*Fourth.* Upon the death of my said wife, I devise and bequeath to the corporation hereinafter directed to be formed, all the excess and residue of my estate over the sum of five hundred thousand dollars specified in the third paragraph hereof.

"*Fifth.* I direct my executor and executrix as soon as practicable after my decease and during the lives of my said wife and her said brother or the life of the longest liver of them, to procure under the laws of the State of Ohio, an incorporation to be formed with proper powers for the purpose of establishing an institution on the farm known as the Williams Farm, formerly owned by me and now owned by my wife, fronting on Erie street in the town of Willoughby, Lake county, Ohio, or if said farm be for any cause not available, then on other suitable premises in the said town of Willoughby, for the free education of girls and for their support in proper cases during education with a special view toward rendering them self-supporting.

"Said institution shall contain, among others, a Sewing Department, Cooking Department, Designing Department and Departments of Phonography and Typewriting and other useful work that would afford the pupils employment in life, including such new discoveries and inventions as may be made from time to time tending to enlarge the opportunities for useful and honorable employment for women and such as will aid them in obtaining honorable and independent positions in life. Such school to be open only to girls between the ages of ten and sixteen, both inclusive.

"Not exceeding one-tenth of the sum devoted to the said institution by the fourth paragraph hereof may be used for the erection of suitable buildings therefor on the said farm or in the contingency above specified for the purchase of suitable premises in said town and the erection of such buildings

thereon and the income of the remaining nine-tenths shall be devoted to the support and maintenance of said institution.

"If, when the said sum shall be received by the said corporation the one-tenth shall not, in the judgment of the directors, be sufficient for such erection or such purchase and erection as the case may be, the whole sum may, in their discretion, be allowed to accumulate until the one-tenth thereof with its accumulation shall be so sufficient when such one-tenth may be used therefor, while the income of the remaining nine-tenths of said sum and accumulations shall be devoted to the support and maintenance of said institution.

"The charter of the said corporation shall also provide if and so far as may be consistent with law and practicable for the management of the said corporation by a board of five directors, to consist of the Governor for the time being of the State of Ohio, the Member of Congress for the time being for the Congressional district embracing the said Town of Willoughby, the Treasurer for the time being of said county of Lake, the Mayor for the time being of Willoughby and the said Gamaliel C. St. John and for the choice of a resident of Willoughby by the said Governor as successor to the said St. John as often as the fifth place shall become or be vacant.

"*Sixth*. If my said wife shall die before me, then the dispositions provided for in the third and fourth paragraphs hereof shall take effect upon my death.

"*Seventh*. I direct my said executor and executrix as soon as they may deem advisable, but within two years after my decease, to sell all my real estate and invest the proceeds in interest paying securities and as to all my estate I give them and my trustees power to invest and reinvest the same or any part thereof having regard both to income and safety.

"*Eighth*. In case my intention with respect to the said institution for girls shall because of illegality fail, or become impossible of realization, I then devise and bequeath the sum intended for it to the Smithsonian Institution at Washington, District of Columbia, to be devoted to the purpose for which it was established."

He appointed his wife executrix and the plaintiff, his brother in-law, executor of his will.

At the time of making said will the testator had a wife, but did not have a child or parent living. The testator and Mrs. Andrews perished in a fire which destroyed their home in the city of New York in the early morning of April 7th, 1899, and it is found as a fact that as between the said Wallace C. Andrews and his wife, Margaret M. St. John Andrews, survivorship is unascertainable. It is also found that the said Wallace C. Andrews at the time of his death did not have a wife, child or parent.

On or about the 13th day of May, 1902, the plaintiff, as the surviving executor named in the will of the testator, procured an incorporation to be formed under the laws of the state of Ohio entitled " The Andrews Institute for Girls," which corporation it is found has capacity under the laws of the state of Ohio to take the gift under the fourth, fifth and sixth clauses of said will; and it is also found that said clauses of said will were at the time of testator's death valid under the laws of the state of Ohio.

The Smithsonian Institution was established in the District of Columbia by act of Congress and by such act it was given power to receive money or other property by gift, bequest or devise.

The Special Term held that the Andrews Institute for Girls took under the will the entire rest and residue of the testator's estate over and above said five hundred thousand dollars, together with the income which accrued and accumulated thereon between the testator's death and the date of the incorporation of said institute. The Smithsonian Institution contends : (1) That as Mrs. Andrews did not survive her husband and the proposed Ohio corporation was not in existence at the time of the death of Mr. Andrews, the gift to the proposed corporation failed. (2) That the so-called Andrews Institute for Girls has no legal existence. (3) That the so-called Andrews Institute for Girls is not the corporation that the testator directed his executors to procure to be formed

and that it is, therefore, incapable of taking the bequest. The Smithsonian Institution and the next of kin of the testator severally contend that the attempted bequest to the Ohio corporation violates the provisions of chapter 360 of the Laws of 1860.

Although the appellants unite in such contention they do not agree as to the effect of sustaining their contention. The Smithsonian Institution contends that the gift to the Ohio corporation is an entirety, and that as it violates the provisions of chapter 360 of the Laws of 1860, it wholly fails for illegality and that the gift passes under the will to it.

The next of kin contend that the gift to the extent of one-half of the testator's estate is valid but that the testator did not have testamentary capacity to give more than one-half of his estate to the proposed Ohio corporation and that the excess is undisposed of by the will and passes to them under the statutes of this state.

The next of kin contend that the income on the rest and residue of the estate accruing between the death of the testator and the incorporation of the Andrews Institute for Girls could not be accumulated for a corporation not in existence and that as such income is not bequeathed by the testator's will it passes to them under the Statute of Distributions.

At the time the testator made his will, his wife made her will by which she gave to him the real property referred to in his will as the Williams farm in the state of Ohio, and also other valuable real property in the city of New York, and she by her will further provided that if her husband should die before her that said real property should " Go to and form a part of his residuary estate and be disposed of according to the provisions of his will bearing even date herewith (therewith)," and she in her will formally adopted and approved his will and copied the same into and made it a part of her will.

Mr. and Mrs. Andrews were possessed of ample fortune. They had no descendants. They had a well-defined scheme for founding a commendable charity. In that scheme they

were in full accord and the will now before us is one of the steps taken to carry out such scheme and purpose. Charitable bequests by persons thus circumstanced have always been favored in this state and there is every reason now why the courts should so far as consistent with the rules of law aid in carrying out the laudable charity intended.

A competent testator may devise his property as to him seems best, providing always that in doing so he does not violate a statute or rule of law.

The validity of the provisions of a will relating to a corporation devisee holding, investing, accumulating and applying the property devised is for the courts of the domicile of the corporation to determine. (*Hope* v. *Brewer*, 136 N. Y. 126; *Robb* v. *Washington & Jefferson College*, 185 N. Y. 485.)

Although it has been found as a fact in this case that the fourth, fifth and sixth clauses of the will of the testator are valid under the laws of the state of Ohio and that the corporation as formed in that state has capacity to take the gift under said clauses of the will, we will briefly refer to the law of this state which in our judgment sustains such gift.

It has long been settled in this state that a person may by will devise and bequeath property to a corporation to be formed after his death if it is therein provided that such corporation shall be so formed and the property vest in it within a period not longer than the lives of two persons in being at the time of the execution of the instrument. (*Burrill* v. *Boardman*, 43 N. Y. 254; *Tilden* v. *Green* 130 N. Y. 29; *Inglis* v. *Trustees Sailors' Snug Harbor*, 3 Peters, 99.)

A gift to a corporation to be so formed is valid in Ohio. (*Trustees of McIntyre Poor School* v. *Zanesville Canal & Manufacturing Co.*, 9 Ohio, 203.)

There is no reason why property cannot be given to a corporation to be formed after the death of the testator and within the restricted period any more than there is why property should not be given to descendants or other persons thereafter to be born. In determining the legality of the

gift there is no distinction between a natural person thereafter to be born and an artificial person thereafter to be organized.

There is nothing in the will under consideration which shows that the testator necessarily expected that the proposed corporation would be formed during the lifetime of his wife. Every statement in the will shows that he contemplated that the corporation be formed " *as soon as practicable after my (his) decease.*"

The gift in the language of the will is " To the corporation hereinafter directed to be formed." The corporation could have been formed in Mrs. Andrews' lifetime if she had survived the testator. In case she had died at some period of time before the testator, or in case she had survived the testator and the corporation had not been formed in her lifetime, it could have been formed thereafter at least within the life of her brother, the executor. The language of the fifth paragraph of the will so states in clear terms, and there is no reason for assuming that it should not be given its clear and ordinary meaning, whether it is considered in determining the time when the gift shall take effect or as a limitation on the period of restraint to the power of alienation. The intention of the testator is further shown by the sixth paragraph of the will, which expressly provides that in case his wife should die before his death, the disposition provided in the third and fourth paragraphs of the will should take effect upon his death. The directions for the formation of the corporation are contained in the will itself, and its formation, therefore, necessarily required that some period of time should elapse after his death in which the corporation could be formed.

In the discussion by the appellants they have not disputed that the gift could have taken effect *in futuro* if Mrs. Andrews had died before the testator's death; neither have they disputed that a corporation might be formed after the death of Mrs. Andrews if she had survived the testator.

We do not appreciate the force of the appellants' contention that notwithstanding a corporation could have been organized to take the gift *in futuro* if Mrs. Andrews had

died before the death of the testator, or if she had died subsequent to the testator and during the lifetime of her brother as she died simultaneously with the testator, the gift to the corporation to be formed has failed.    We are of the opinion that if Mrs. Andrews had survived her husband and the corporation had been formed in her lifetime, the gift would have been one *in præsenti*, taking effect upon the death of Mrs. Andrews, but as Mrs. Andrews did not survive her husband and the corporation could not be formed except under the directions contained in the testator's will, it is necessarily a gift *in futuro* to take effect upon the organization of such corporation.

The testator's direction to the executor and executrix and the survivor of them, was to procure an incorporation to be formed under the laws of the state of Ohio, without specifying any particular method of procuring such incorporation. He did not direct that it should be chartered by an act of the general assembly of the state of Ohio.    Indeed, if he gave the matter any special consideration he must have known that the constitution of the state of Ohio prohibits the passage of special acts conferring corporate powers.    (Constitution of Ohio, art. 13, sec. 1.)

At the death of the testator the general statutes of Ohio provided that corporations might be formed for any purpose for which individuals might lawfully associate themselves, except for carrying on professional business.    (Bates Ann. Ohio Statutes [6th ed.], vol. 2, p. 1836.)

Subsequent to the death of the testator and in March, 1902, an act was passed by the general assembly of the state of Ohio entitled "An act to provide for the administration of charitable trusts in certain cases."    If we assume that such act was passed to aid in the incorporation of the Andrews Institute for Girls, it is not necessarily unconstitutional for that reason. It is not an uncommon thing in any state for questions to arise making it desirable or perhaps necessary for further general legislation to enable persons interested to carry out desired and desirable measures.    The fact that such further

general statute is passed to aid a particular person for the time being does not make the act a special, as distinguished from a general one. Whether an act, general in form, is a mere device to evade a wholesome constitutional provision is largely dependent upon the special circumstances of each case. If the act relates to persons, places and things as a class and is neither local nor temporary the mere fact that its practical effect is special and private does not necessarily prove that it violates constitutional provisions against special legislation. (*Matter of N. Y. El. R. R. Co.*, 70 N. Y. 327–344; *In the Matter of Church*, 92 N. Y. 1; *Matter of Henneberger*, 155 N. Y. 420, 426; *People* v. *Dunn*, 157 N. Y. 528; *Kittinger* v. *Buffalo Traction Co.*, 160 N. Y. 377; *People ex rel. Clauson* v. *Newburgh & S. Plank Road Co.*, 86 N. Y. 1; *Matter of N. Y. & L. I. Bridge Co.*, 148 N. Y. 540; *Waterloo W. M. Co.* v. *Shanahan*, 128 N. Y. 345; *Ferguson* v. *Ross*, 126 N. Y. 459; *Sun P. & Pub. Association* v. *Mayor etc., of N. Y.* 152 N. Y. 257.)

The act so passed by the general assembly of the state of Ohio in 1902 would not seem to be a violation of the Constitution of that state. (*Platt* v. *Craig*, 66 Ohio St. 75; *State ex rel.* v. *Spellmire*, 67 Ohio St. 77; *Gentsch* v. *State ex rel. McGorray*, 71 Ohio St. 151; *Cin. Street R. Co.* v. *Horstman*, 72 Ohio St. 93; *State ex rel. Atty.-Gen.* v. *Sherman*, 22 Ohio St. 411.)

Subsequent to the death of the testator, and on the 8th day of May, 1902, "The Andrews Institute for Girls" was incorporated pursuant to the laws of the state of Ohio "for the purpose of receiving the property devised and bequeathed in and by the wills of Wallace C. Andrews and Margaret M. St. John Andrews, late of the city and state of New York, to the corporation therein directed to be formed and for the purpose of carrying out the charitable purposes in such wills expressed, and of establishing and maintaining the institution therein provided for."

The articles of incorporation include a complete copy of the will of the testator and also of the will and codicil of Margaret M. St. John Andrews. They also provide that the corpo-

ration shall be located in the town of Willoughby, Ohio, and name as members of the corporation the persons proposed in the will of said testator, together with two other persons in the state of Ohio, which persons so named constitute the board of directors for the administration and management of the property and trust or other funds of the corporation, and for the control and management of said institution. Said act of the general assembly of the state of Ohio among other things provides: " The attorney-general of the state of Ohio shall in his official capacity have power to bring proceedings in any court of record and enforce any such devise or bequest whenever he deems such action necessary for the protection and carrying out of the purposes named in said last will and testament without waiting for the organization of such corporation."

Many objections are urged to the Andrews Institute for Girls taking the gift because it is claimed that it is not the corporation that the testator directed his executor to procure to be formed. It does not seem necessary to consider these objections at length in view of the fact that the articles of incorporation do not violate any of the provisions of the will of the testator and of the further fact that the will is made a part of the articles of incorporation. The attorney-general of the state of Ohio has authority by the general statutes of that state to cause proper suits to be instituted to enforce the performance of trusts for charitable and educational purposes and to restrain the abuse thereof, whenever upon the complaint of others or from his own knowledge he deems such suit to be advisable or whenever by the governor, the Supreme Court or the general assembly or either branch thereof he is directed so to do and such suits may be brought in his own name on behalf of the state or of the beneficiary of the trust. The statute of 1902 as we have seen also provides that the attorney-general shall have power to bring proceedings to enforce such devise or bequest whenever he deems such action necessary for the protection and carrying out of the purposes named in such will. We are of the opinion that the plaintiff

as the surviving executor of the last will and testament of the testator has procured to be formed an incorporation under the laws of the state of Ohio as directed by said will and that such corporation has power to take the gift and hold the same for the purposes of its incorporation.

It is conceded that the testator left more than one-half of his estate after the payment of his debts to the corporation to be formed as stated in his will.

Chapter 360 of the Laws of 1860 provides as follows : " No person having a husband, wife, child or parent, shall, by his or her last will and testament, devise or bequeath to any benevolent, charitable, literary, scientific, religious or missionary society, association or corporation, in trust or otherwise, more than one-half part of his or her estate, after the payment of his or her debts, (and such devise or bequest shall be valid to the extent of one-half, and no more)."

When the testator made his will his wife was living, but the Special Term was unable to determine which, if either, survived the other. The rule is that there is no presumption of survivorship in the case of persons who perish by a common disaster, in the absence of proof tending to show the order of dissolution. In such case the question of actual survivorship is regarded as unascertainable, and descent and distribution take the same course as if the deaths had been simultaneous. (*Young Women's Christian Home* v. *French*, 187 U. S. 401; *Newell* v. *Nichols*, 75 N. Y. 78.)

Does the act of 1860 speak as of the time when a person executes a will, or of the time when by the death of the testator the will becomes operative and effective ? If the act speaks as of the death of the person making the will, did the testator in this case die " having a wife ? "

The purpose of the act is important, and this court in *Hollis* v. *Drew Theological Seminary* (95 N. Y. 166, 175), referring to a will made within two months before the testator's death (see Laws of 1848, chapter 319, section 6), say : " Such wills become evil only like all wills when they fail to deal fairly and justly by those persons who have claims upon the

testator's care and bounty, and the policy of the statute is to protect such persons, and this it does by a general rule. There is no policy outside of the statute which condemns such wills. The policy is found only in the statute and reaches no further than the statute."

Again in the same case the court say: "It is not against public policy to allow gifts to charitable, benevolent, scientific, or educational institutions; the law allows and encourages such gifts and those who make them are commended as the benefactors of their race." In that case the court also say that it is as praiseworthy to give to those institutions by will within two months before a testator's death as at an earlier date.

So it is as praiseworthy in this case to give an amount in excess of one-half of the estate of the testator after the payment of debts as to give one-half thereof except so far as the giving an amount in excess of one-half affects the rights and personal interests of those dependent upon the testator for their care and support.

The statute in question is not a mortmain act. (*Amherst College* v. *Ritch*, 151 N. Y. 282, 333.) Quoting from the case last mentioned the court further say: "It is aimed simply at the giving of an undue proportion to charity by will when certain near relatives have in the opinion of the legislature a better claim. * * * Its theory is not to keep property away from charitable corporations but to prevent a testator from giving them more than one-half of his net estate at the expense of his wife, child or parent. Its sole purpose is to protect those natural objects of his bounty from improvident gifts to their neglect. * * * It points toward no public interest but toward the prevention of what the legislature regarded as a private wrong. It was passed for the benefit of the persons named in it not for the benefit of the people at large as a measure of state polity. Indeed the state has no policy against institutions of charity or learning."

This court in *Chamberlain* v. *Chamberlain* (43 N. Y. 424, 440), in referring to this act, say: "The object of which was to prevent a person upon whom others standing in near relation

18

had claims from disappointing their just expectations and disinheriting them from pious or philanthropic motives."

The statute does not in terms say that a person having a husband, wife, child or parent shall not *make his or her last will and testament* and devise or bequeath to a charitable or other association more than one-half of his or her estate. If the legislature so intended it would have been a very simple matter for it to have used language to prevent the making of a will devising or bequeathing to charitable or other associations more than one-half of the property owned by the person at the date of the will or that might be thereafter acquired by such person. The language of the statute should be construed as commonly understood, and the words " devise or bequeath " have been generally treated and understood as referring to the time when the will takes effect.

A will takes effect not at the time of its execution but **on** the death of the testator. In *Moultrie* v. *Hunt* (23 N. Y. 394) this court, referring to a will, say : " It is of **the** essence of a will that until the testator's death it is ambulatory and revocable. No rights of property or powers over property were conferred upon any one by the execution of **this** instrument, nor were the estate, interest or rights of the testator in his property in any way abridged or qualified by that act. The transaction was in its nature inchoate and provisional ; it prescribed the rules by which his succession should be governed, **provided** he did not change his determination **in** his lifetime."

It is not contended but that the statute in referring to the part or portion of the estate that **a** person can give to a charitable or other association **refers to** the time of the death of the person making the gift. If **this** were not so it would be necessary in every instance to proceed as of the date of the will to an accounting to ascertain the extent of the assets and liabilities of every testator making gifts to such associations.

The act should be considered from a practical and reasonable standpoint. The appellants' contention would require us to construe the statute as speaking of one time for one purpose and of a different time for another purpose. If we con-

strue the statute as in all things referring to the time when the will is made a person might make a will which would not then violate the statute and by acquiring more property he might leave at his death far more than one-half of his estate to charitable or other associations contrary to the spirit of the act without violating its terms.   Numerous illustrations could be suggested of the result of accepting the appellants' contention such as a will made at a time when a person had one or more of the named relatives living, all of whom should predecease him, or a will made by a person when he did not have one or more of the named relatives living and subsequently by marriage and the birth of children such person should die leaving one or more such relatives.

The statute does not require or reasonably admit of the appellants' contention.   With the exception of the query in *Matter of Dowd* (58 How. Pr. 107; *S. C.*, 8 Abb. N. C. 118) and what was said in *McKeown* v. *Officer* (25 N. Y. S. R. 319), the courts have quite uniformly referred to the act of 1860 as one intended to prevent a person *who leaves him surviving* a husband, wife, child, or parent from giving in trust or otherwise to charity more than one-half of his estate. (*Amherst College* v. *Ritch*, 151 N. Y. 282, 332, 340; *Lefevre* v. *Lefevre*, 59 N. Y. 434; *Matter of Will of Walker*, 136 N. Y. 20, 26; *Henriques* v. *Sterling*, 26 App. Div. 30, 34; *Chamberlain* v. *Chamberlain*, 3 Lansing, 348, 386; *S. C.*, 43 N. Y. 424; *Robb* v. *Wash. & Jeff. College*, 103 App. Div. 327; *Matter of Stilson*, 85 App. Div. 132.)   In these and many other cases in construing said act the words "having" and "leaving" have been used interchangeably.

It has frequently been held in contracts relating to insurance and other matters where a certain result is to follow in case of one beneficiary dying before the insured or promisor, that in case of a death of the insured or promisor and the beneficiary at the same time that the result will follow and that dying at the same time is equivalent to dying before. (*Young Women's Christian Home* v. *French*, 187 U. S. 401; *Paden* v. *Briscoe*, 81 Texas, 563; *Fuller* v. *Linzee*, 135

Mass. 468; *Balder* v. *Middeke,* 92 Ill. App. 227; *Southwell* v. *Gray,* 35 Misc. Rep. 740; *Middeke* v. *Balder,* 198 Ill. 590; *Males* v. *Sovereign Camp,* 30 Texas Civ. App. 184; *Supreme Council* v. *Kacer,* 96 Mo. App. 88.)

It is interesting to note that in this case if we assume that the statute speaks as of the date of the will, except that the estate is treated as of the net amount left by the testator at his death, nevertheless the will does not devise or bequeath more than one-half of the net estate to the Andrews Institute for Girls if Mrs. Andrews' life estate is computed in the usual way of computing the value of a living life estate owner.

We think that in view of the purpose for which the act was passed and has been continued in force, and in view of the universality of the rule that a will speaks from the death of the testator, that the statute should be construed to mean the same as if the words "him or her surviving" were therein appropriately used to indicate the time at which the statute intends to speak.

Mr. and Mrs. Andrews perished together. There was no point of time when the title of Mr. Andrews was divested at which Mrs. Andrews could have taken it, and in construing such statute her simultaneous death is in effect the same as a death before his death. (*Young Women's Christian Home* v. *French, supra.*)

The Andrews Institute for Girls was not organized until the 8th day of May, 1902. It was more than three years from the date of the death of the testator before such corporation came into being. During that time income accrued upon the residuary fund so given to said corporation to be formed. The question as to who is entitled to such income has been discussed at great length in this court, but a clear statement of a few simple and uncontroverted propositions makes its determination comparatively plain and easy.

If the corporation had existed prior to the death of the testator so that the gift to it could have taken effect upon such death no question would have arisen but that such corporation would have been entitled to the income upon the fund

even before it had actual possession thereof. The gift of the rest and residue of the testator's property was a gift of an expectant estate to take effect upon the formation of the corporation. Some income necessarily accrued thereon at a time before such corporation was capable of receiving the same. Such income was either payable as it accrued to some person or persons entitled to receive it, or it was the duty of the executor to accumulate the same for the benefit of the corporation when formed.

It is provided by the Real Property Law (Laws of 1896, chapter 547, section 51) that "All directions for the accumulation of the rents and profits of real property, except such as are allowed by statute, shall be void." The only directions for the accumulation of rents and profits of real property that are allowed by statute are those for the benefit of infants in being at the creation of the estate out of which the rents and profits are to arise.

It is also provided by the Real Property Law (Section 53) that "When, in consequence of a valid limitation of an expectant estate, there is a suspension of the power of alienation, or of the ownership, during the continuance of which the rents and profits are undisposed of, and no valid direction for their accumulation is given, such rents and profits shall belong to the persons presumptively entitled to the next eventual estate."

It is provided by the Personal Property Law (Laws of 1897, chapter 417) that an accumulation of the income of personal property directed by any instrument for the benefit of minors in being at the date of the instrument or the death of the person executing the same is valid, and it is further therein provided that "All other directions for the accumulation of the income of personal property, not authorized by statute, are void." (Section 4.)

By section 2 of said Personal Property Law provision is made for the suspension of the absolute ownership of personal property during the continuance and until the termination of not more than two lives in being at the date of the instrument containing such limitation or conditions or if such

instrument be a will for not more than two lives in being at the death of the testator. And it is therein further pro- vided that "In other respects limitations of future or contin- gent interests in personal property, are subject to the rules prescribed in relation to future estates in real property." The accumulation of income for any period of time except for the benefit of a minor as stated, is prohibited by statute. (*Cochrane* v. *Schell*, 140 N. Y. 516; *Manice* v. *Manice*, 43 N. Y. 376; *Pray* v. *Hegeman*, 92 N. Y. 508; *Thorn* v. *De Breteuil*, 179 N. Y. 64; *Hascall* v. *King*, 162 N. Y. 134.) Obviously, implied accumulations are as much forbidden as express ones. (*Vail* v. *Vail*, 4 Paige, 317.)

It is urged that chapter 701 of the Laws of 1893 has removed gifts, grants, bequests or devises to religious, educa- tional, charitable or benevolent uses from the statutory pro- hibition against accumulations. A rule of law established by judicial decisions and by statute and so rigidly adhered to for many years should not be held to have been abrogated by a subsequent statute unless the intention of the legislature so to abrogate the same is expressed in clear terms or by neces- sary implication. Both the said Real Property Law and the said Personal Property Law from which we have quoted were enacted subsequent to said act of 1893 without making any exceptions to the general prohibition against accumulations contained therein other than as stated by us.

Said chapter 701 of the Laws of 1893 as originally enacted and as amended by chapter 291 of the Laws of 1901 does not in clear terms remove the prohibition against accumulations in favor of gifts therein named to charitable and other uses. It provides that gifts, "in other respects," "valid under the laws of this state" shall not be deemed invalid by reason of the indefiniteness or uncertainty of the persons designated as the beneficiaries and gives to the Supreme Court control over such gifts. If it is held that the prohibition against accumu- lations as to such gifts has been abrogated it would enable an accumulation for any term of years providing the future estate however remote is given in trust for charity. We are

not willing to hold that such gifts are exempt from the prohibition against accumulations. (*Smith* v. *Chesebrough,* 176 N. Y. 317; *Robb* v. *Wash. & Jeff. College, supra.*)

The income on the residuary fund left by the testator could not be accumulated during the period between his death and the formation of such corporation. The income of the said residuary fund belonged as it accrued to some person or corporation who could spend it at will. There is no provision of the will expressly giving and bequeathing it. We must, therefore, turn to the statute to ascertain to whom it should be paid.

It is provided by statute that it belongs " To the persons presumptively entitled to the next eventual estate." The persons entitled to the next eventual estate are the persons entitled to the estate at the end of the period of accumulation. This court in *Manice* v. *Manice* (*supra*) say : " The statute does not say the ultimate, but the next eventual estate. That is, the estate which is to take effect upon the happening of the event which terminates the accumulation. Those who presumptively will be entitled to receive the rents and profits, when the period of accumulation ends, are entitled to anticipate the event which is to terminate the accumulation and to take at once, the rents and profits which are undisposed of or unlawfully directed to be accumulated."

The event was the formation of the Andrews Institute for Girls, and the person entitled to the estate on the happening of the event is said Andrews Institute for Girls, but said institute could not anticipate the event which was to terminate the accumulation, because it was not in existence, and it was not capable of receiving such income.

The Smithsonian Institution is not a residuary legatee. The gift to it is an alternative gift dependent upon the gift to the Andrews Institute for Girls failing because of illegality or because the intention of the testator with respect to said institution became impossible of realization. The proposed incorporation is not and never was illegal. It could not, therefore, fail for illegality. Neither was it ever *impossible*

of realization.   The Smithsonian Institution, therefore, is not and never was presumptively entitled to the next eventual estate.

The delay in the incorporation of the Andrews Institute for Girls was not merely incidental and fortuitous as where a fund is vested in a corporation and only the possession is temporarily and incidentally withheld.   The corporation in this case was to be formed "As soon as practicable" and "During the lives of my (testator's) said wife or her said brother or the life of the longest liver of them."   A delay under such directions, whether for a longer or shorter period of time, is not merely incidental, but a delay by which the gift becomes a future estate.   It is a matter of little consequence whether the income arising before the vesting of the future estate is called an increment, accretion or acceleration of the principal or an accumulation.   It cannot under either name be paid to the Andrews Institute for Girls except as an accumulation of income arising from the fund at a time not only before the vesting of the future estate but at a time when the corporation had not yet come into being.

The testator having failed to give and bequeath such income to a person or persons capable of receiving it, such income passes to the next of kin under the Statute of Distributions.   (*Cochrane* v. *Schell*, 140 N. Y. 516; *U. S. Trust Co.* v. *Soher*, 178 N. Y. 448.)

It is unnecessary to discuss the many other questions presented upon this appeal.

The judgment appealed from should be modified so as to give to the next of kin of the testator the income on the rest and residue of the estate from the date of the death of the testator to the formation of such corporation, and as so modified the judgment should be affirmed, with costs to each of the attorneys appearing and filing briefs in this court payable out of the principal fund.

Cullen, Ch. J., Gray, Haight, Werner, Willard Bartlett and Hiscock, JJ., concur.

Judgment accordingly.