In the Matter of the Judicial Settlement of the Account of CENTRAL
UNION TRUST COMPANY OF NEW YORK and Others, as Executors
of and Trustees under the Will of AUGUST D. JUILLIARD, Deceased.

FREDERIC A. JUILLIARD and Others, Appellants, Respondents;
JUILLIARD MUSICAL FOUNDATION, Appellant; LAURA CORNELIA
DE TIBLE MACHADO, Individually and as Administratrix, etc.,
of AUGUST FREDERIC JUILLIARD, Deceased, and Others,
Respondents.

Second Department, December 27, 1923.

Wills — construction — testamentary trust — devise in trust to corpo-
ration to be organized after testator's death and within lives of two
persons in being — will provided that income from property devised
in trust should be paid to nephew until organization of corporation
and that there should be no apportionment to nephew of income
partially or wholly earned but not yet due and payable at time of
organization — trust fund did not pass until organization of corpora-
tion — attempted gift of part of income to corporation was void as
unlawful accumulation — nephew entitled to receive income due and
payable at date of organization of corporation — as to income partially
or wholly earned but not due and payable at date of organization
testator died intestate — corporation incorporated by special act of
Legislature not organized until meeting of incorporators — legatees
to whom trust fund was to go in case corporation was not organized
not entitled to income.

On the judicial settlement of the accounts of executors and trustees the question
for determination was the distribution of the income of property devised in
trust accruing between the date of the testator's death and the date of the
organization of the corporation to which the property was to be transferred.
It appeared that the testator devised property in trust to his executors with
direction to organize a corporation for charitable purposes as soon after his
death as possible and within the lives of two persons in being and to convey
to said corporation the property so devised; that by another provision of the
will he provided that the income from the property thus devised in trust
arising between the date of his death and the organization of said corporation
should be paid to his nephew, but that upon the organization of the corporation
the distribution of income from the fund to the nephew should cease and that
there should be no apportionment to him of income partially or wholly earned,
but not yet due and payable at the date of the organization of the corporation;
that it was also provided in the will that in case the corporation was not
organized as directed, then the entire fund should go to other corporations in
equal amounts, and that the corporation was organized about one year after
the death of the testator.

Held, that the title to the entire fund devised in trust was not conveyed to
trustees of a charitable trust immediately upon the testator's death, but there
was an intervening non-charitable estate between the death of the testator and
the incorporation of the corporation provided for by the will;

That the attempted gift of a part of the income to the corporation by providing that there should be no apportionment to the nephew of income partially or wholly earned but not yet due and payable when the corporation was organized was void as an unlawful accumulation;

That the nephew is entitled to receive so much of the income of the estate devised in trust which accrued between the date of the death of the testator and the date of the organization of the corporation as was due and payable on the last date;

That the testator died intestate as to income partially or wholly earned but not yet due and payable at the time of the organization of the corporation;

That the corporation was not organized when the special act of the Legislature became a law but the organization dates from the first meeting of the incorporators;

That the legatees who would have been entitled to the fund devised in trust in case the corporation had not been organized as provided by the will are not entitled to receive the income of the trust property which accrued between the date of the testator's death and the date of the organization of the corporation.

MANNING, J., dissents.

APPEALS by Frederic A. Juilliard and others from portions of a decree of the Surrogate's Court of the county of Orange, entered in the office of said Surrogate's Court on the 17th day of March, 1922, judicially settling the account of the executors of and trustees under the will of August D. Juilliard, deceased.

Augustus D. Juilliard died a resident of Tuxedo, in the county of Orange, on April 25, 1919, and his will was duly admitted to probate on the 25th of September, 1919. The will contains many legacies to certain relatives, and sets up trusts in large amounts to other relatives. The testator left no descendants and no widow. He left him surviving two sisters, Catherine J. Walker and Anne J. Cahill. The other next of kin were nephews and nieces and descendants of nephews and nieces. By the 7th paragraph of his will he left to his nephew, Frederic A. Juilliard, the sum of $3,000,000; also his house at Tuxedo, with its contents; all real estate owned by him at Tuxedo; his dwelling house No. 11 West Fifty-seventh street, in the city of New York; his opera box in the Metropolitan Opera House; and all his jewels, furnishings and personal effects of every kind and nature. Frederic A. Juilliard, the nephew thus favored, had been a member of the testator's household since 1893, and had been taken by the testator as a partner in the business known as A. D. Juilliard & Co. The testator at the time of his death was eighty-three years of age; and while he continued active in his business affairs, he had given his nephew, Frederic, a power of attorney to act for him during his long and frequent absences from the city of New York. The partnership of A. D. Juilliard & Co., which was engaged in the dry goods commission business in the city of New York, was formed by the

testator in 1874 and was continued by successive partnerships down to the date of his death. The controlling interest in the partnership had always been owned by him. At the time of his death, and for many years prior thereto, the testator had owned shares of stock in various mills.

The 39th paragraph of the will reads as follows:

"I authorize and empower my Executors and Trustees hereinafter named or such of them as shall qualify and undertake the execution of this my Will and the Survivors or Survivor of them and their successors to sell my interest in the firm of A. D. Juilliard & Company to my surviving partners for a sum which shall equal the value of my interest therein at the date of my death, the value of which interest shall be determined upon the inventory value of all the property of said firm, including the capital invested, stock on hand and bills and accounts receivable, and deducting outstanding bills and accounts payable, but without including any valuation on the good-will of said partnership, my interest in which I give and bequeath to my said surviving partners absolutely, provided they purchase my interest from my said Executors and Trustees as herein provided, and I authorize my Executors to receive in payment for my said interest in said partnership the notes of the surviving members of my said partnership bearing interest at four and one-half per cent. (4½%) per annum, and payable one-half thereof within five years from the date of my death and the other half thereof within ten years from the date of my death, with the privilege of paying all or any of said notes before maturity. If my said surviving partners shall not, for any reason, purchase my said interest on the terms set out herein, then I direct my said Executors and Trustees to take such proceedings as are necessary to liquidate my interest in said firm as soon after my death as may be practicable, consistent with the character and operations of said firm.

"I also empower my said Executors and Trustees to sell all my interest in or in the securities of any mills in which I may have an interest at the time of my death to my said surviving partners for a sum which shall equal the value of my said interests as ascertained on an inventory basis. And I authorize my Executors to receive in payment for my said interests the notes of the surviving members of my partnership bearing interest at four and one-half per cent. (4½%) per annum, and payable one-half thereof within five years from the date of my death and the other half thereof within ten years from the date of my death, with the privilege of paying all or any of said notes before maturity. If my said surviving partners shall not, for any reason, purchase my

said interests on the terms set out herein, then I direct my said
Executors and Trustees to sell the same as soon after my death
as may be practicable, consistent with the character and operations
of said mills or corporations operating the same."

The 41st paragraph reads as follows:

" With respect to the legacies given in trust by this Will,
I authorize and empower my Executors and Trustees in their
discretion, to retain, set apart and hold as investments of such
trusts, or either of them, any of my real estate, personal invest-
ments or securities held by me at the time of my death, or acquired
by them in the administration of my estate, or any notes of my
former partners, at the market value at the time they shall be so
set apart, and I direct that the market value as fixed by my said
Executors and Trustees shall be absolute and binding upon all
parties in interest."

The 42d paragraph reads as follows:

" I do hereby authorize and empower my Executors and Trustees
hereinafter named or such of them as shall qualify and undertake
the execution of this my Will and the Survivors or Survivor of
them and their successors, to continue to hold as investments for
the various trusts herein created for so long as they, he or it in
their, his or its discretion may deem fit, any and all real estate,
stocks, bonds, notes, securities or items of property, real or personal,
belonging to me at my death or which may be transferred or con-
veyed by the Executors to such trusts respectively, including
any notes of my former firm, although the same may not be of the
character permissible for trust investments by the general rules
of law, and likewise in respect to each and all of said trusts they
shall have full power and authority to convey, dispose of, call
in and change any or all investments of such trust estate respectively,
and to sell and convey any and all real estate of which I may die
seized or which may at any time belong to said trusts respectively
and to lease any such real estate for any term or terms not pro-
hibited by law, and likewise full power and authority to make any
and all additions, improvements and alterations to any and all
real estate of which they may at any time be seized as such Trustees,
including the demolition of old buildings and the erection of new
buildings, which in their discretion seems for the best interests
of the various trust estates, using for that purpose so much of the
capital of the various trust estates as in their absolute discretion
is advisable, and also to make investments of any funds or means
of any of said trust estates which may at any time belong to any
of such trusts, not only in such subjects as are or may be per-

31

missible for trust investments by the general rules of law existing at the time being, but likewise in the purchase of, or loans upon, the security or any securities or items of personal property whatsoever, wheresoever located, as they, he or it may see fit, and likewise in the purchase of improved, productive, unincumbered real estate in fee simple, whether within or without the State of New York, and likewise full power and authority to effect insurance of any kind which in their discretion may seem proper upon any property which may belong to any of such trusts, to such extent as they, he or it may deem advisable, paying the premium thereof out of income, and in case of loss, applying insurance moneys collected in their discretion to reparation or rebuilding. I also authorize them or he or it to compromise, compound, settle and adjust by arbitration, purchase or otherwise, according to their discretion all accounts, contracts, agreements, claims, demands, suits at law or in equity and controversies in favor of or against or belonging or relating to me or to my estate and to make any payments necessary therefor out of any funds in their hands."

The 45th paragraph reads as follows:

" I give, devise and bequeath all of the rest, residue and remainder of my estate of whatever kind or nature, including therein all legacies which shall lapse, and all legacies, bequests or other testamentary dispositions which for any reason shall be or become ineffectual or be declared invalid, as follows:

" (a) Unto my Executors and Trustees hereinafter named, or such of them as shall qualify and undertake the execution of this my Will and to the Survivors or Survivor of them and their successors IN TRUST, giving and granting to my said Executors and Trustees the same rights and powers in connection with the management and investment of said trust fund as are conferred upon them by the section of this my Will, marked ' Forty-second.'

" (b) I do hereby direct and instruct my said Executors and Trustees, or such of them as shall qualify and undertake the execution of this my Will, and the Survivors or Survivor of them and their successors, as soon after my death as may be practicable, and within the lifetime of my nephew Frederic A. Juilliard and my partner Robert Westaway, and the survivor of them, to incorporate or cause to be incorporated under the general laws of the State of New York or by special Act of the Legislature of the State of New York, a corporation to be known as the ' Juilliard Musical Foundation,' which shall have authority, among such other powers as may be conferred upon it, to take and hold property and administer, invest and reinvest the same, and to devote the income therefrom to the objects of said organization, which shall

be in general scope as follows: (a) to aid worthy students of music in securing a complete and adequate musical education, either at appropriate institutions now in existence or hereafter created, or from appropriate instructors in this country or abroad; (b) to arrange for and to give without profit to it musical entertainments, concerts and recitals of a character appropriate for the education and instruction of the general public in the musical arts; and (c) (to such extent as it may be lawfully entitled so to do without affecting the validity of the trust by this section of my Will created) to aid by gift of part of such income at such times and to such extent in such amounts as the Trustees of said Foundation may in their discretion deem proper, the Metropolitan Opera Company in the City of New York, for the purpose of assisting such organization in the production of operas, provided that suitable arrangements can be made with such company so that such gifts shall in no wise inure to its monetary profit.

" In thus stating the objects of and the powers to be given to said corporation, I do not intend to limit my said Executors and Trustees hereinafter named, or such of them as shall qualify and undertake the execution of this my Will, the Survivors or Survivor of them and their successors, or the incorporators of said corporation, to the language thus employed by me, nor that the charter to be procured by them shall be limited only to the objects above set forth, but that such charter shall provide in some form of language for the power to carry out some or all of the objects thus specified by me, and may contain such other enumeration of powers as by my said Executors and Trustees hereinafter named, or such of them as shall qualify and undertake the execution of this my Will, the Survivors or Survivor of them and their successors, or the incorporators of said corporation, may be deemed necessary or convenient to the proper fulfillment of the purposes I have in view as herein expressed, and as may be sanctioned by the laws of the State of New York. The details of the organization and the maintenance of, and the rules and regulations concerning the conduct of the business of the said corporation, I leave to the good judgment of the Trustees of the said corporation, hereby authorizing them to perfect and carry out such details in such manner as to them shall seem best.

" (c) I do hereby direct my Executors and Trustees hereinafter named, or such of them as shall qualify and undertake the execution of this my Will, the Survivors or Survivor of them, and their successors, upon the organization of said corporation the Juilliard Musical Foundation, and within the lifetime of said Frederic A.

Juilliard and Robert Westaway and the survivor of them, to transfer and pay over unto the said corporation, the entire capital of the said trust fund created by this section of my Will, marked ' Forty-fifth ' in order that said corporation may devote the same under the laws of the State of New York, to the uses and purposes that may be provided in the charter as aforesaid.

" The failure for any reason of my trustees to carry out or of the proposed corporation to be organized to carry out any one of the methods I have indicated for the purpose of accomplishing my main purpose shall in no wise prevent the effecting of any or all other methods and this bequest shall be and be deemed to be of the same effect as though such method had not been enumerated.

" It is my request that the President of the Central Trust Company of New York, the President of the Guaranty Trust Company of New York and my nephew Frederic A. Juilliard shall act as Trustees of said corporation for at least the first year of its existence, and for as long thereafter as they shall be elected and may be willing to serve, and it is my request that these three persons select to act with them on said Board of Trustees at least two other persons, who they deem best qualified to assist them in carrying out the objects and purposes of said corporation, and that such persons shall act as Trustees of said corporation for at least the first year of its existence, and for so long thereafter as they shall continue to be selected by the said three persons first above named, and continue to be elected and willing to serve. It is my desire that in naming future Trustees, the names of those proposed to be selected shall first be submitted to the members for the time being of the Executive Committees of the Central Trust Company of New York and the Guaranty Trust Company of New York, and that only such persons as such bodies respectively shall approve shall be named as such Trustees. It is my desire that it shall be provided in the charter or by-laws of said corporation that the trustees shall have power to increase their number and to fill any vacancies occurring in the Board.

" (d) Until the organization of the corporation Juilliard Musical Foundation as hereinabove provided (which I trust may be accomplished without any appreciable delay after my death) and within the lifetime of said Frederic A. Juilliard and Robert Westaway, and the survivor of them, I direct my said Executors and Trustees under this Will to pay over unto said Frederic A. Juilliard all income that may be actually received from the fund provided to be transferred to said corporation upon its organization, but that upon the organization of said corporation all distribution

of income from said fund unto said Frederic A. Juilliard shall cease, and there shall be no apportionment to him of income partially or wholly earned, but not yet due and payable at the time above stated.

" If for any reason the said corporation shall not be organized within the time specified, to wit, within the lives of said Frederic A. Juilliard and Robert Westaway, and the survivor of them, or if for any other reason the provisions of this clause shall be ineffectual, then I give, devise and bequeath the entire fund and estate referred to in this section of my will marked ' Forty-fifth ' unto the American Museum of Natural History and St. John's Guild in the City of New York in equal amounts."

The Juilliard Musical Foundation was incorporated by a special act of the Legislature (Laws of 1920, chap. 89) on March 30, 1920, and the first organization meeting directed to be held under the act was had on April 16, 1920.

There was delay in the probate of the will, said to have been occasioned by the filing of objections by Mary Etta Fauve, a niece of the testator. Those objections were withdrawn in September, 1919  There were apparently differences of opinion concerning the determination of the value of the testator's interest in the partnership business and the value of his mill shares.   It was not until November, 1920, that the executors and the surviving members of the firm reached an agreement that the inventory value of the testator's interest in the business and in the mill shares was $14,303,283.14.   On November 16, 1920, the surviving partners formally notified the executors that they would purchase the outstanding interest in the partnership and in the mill stocks for this sum.   The purchase was closed on the basis above named, and on November 23, 1920, the surviving partners delivered to the executors and trustees four promissory notes dated April 25, 1919, as follows:   Note for $2,789,109.65, due April 25, 1924.   Note for a like amount, due April 25, 1929, in payment of the mill stocks. Two notes, each for $4,362,531.92, one due April 25, 1924, and the other due April 25, 1929, in payment of the interest of the testator in the partnership of A. D. Juilliard & Co.

On November 22, 1920, prior to the delivery of the notes and the check for interest hereinafter referred to, the whole transaction was approved by the Juilliard Musical Foundation.

At the time of the delivery of the promissory notes the surviving partners also signed their check for $965,471.60 in payment " of any and all interest due from us on account of the said notes, up to and including the interest due on October 25, 1920." The notes above mentioned provided for the payment of interest at

the rate of four and one-half per cent per annum, payable semi-annually on October 25, 1919, April 25, 1920, October 25, 1920, and April 25, 1921, and annually thereafter at the same rate of four and one-half per cent. The aggregate of the notes, namely, $14,303,283.14, is less in amount by $421,011.55 than the inventory value as fixed for the purpose of computing taxes under the Transfer Tax Act.

*Isaac N. Mills* [*A. J. Fowler* with him on the brief], for the appellants Catherine J. Walker and others.

*Charles H. Tuttle* [*Edward Cornell* and *Martin A. Schenck* with him on the brief], for the appellant Juilliard Musical Foundation.

*E. J. Dimock* [*Lewis L. Delafield* and *Alfred Gregory* with him on the brief], for the appellant, respondent, American Museum of Natural History.

*Richmond Weed*, for the appellant, respondent, St. John's Guild in the City of New York.

*Charles E. Rushmore*, for the respondent Frederic A. Juilliard, individually.

*James A. O'Gorman* [*Lanman Crosby* with him on the brief], for the respondents Laura Cornelia de Tible Machado, individually and as administratrix, etc., and another.

*Frank Lybolt*, special guardian for infants and incompetent.

KELBY, J.:

The method pursued by the executors in consummating the sale of the testator's interest in the partnership of A. D. Juilliard & Co., and the sale of the mill stocks owned by the testator, followed the power of sale vested in the executors and trustees by section 39 of the will. The power of sale as to the partnership interest practically vested in the trustees the power to liquidate the partnership interest by contract with the surviving partners. It was provided, as to the sale of the partnership interest, that such sale could be made to the surviving partners " for a sum which shall equal the value of my interest therein at the date of my death, the value of which interest shall be determined upon the inventory value of all the property of said firm." Notes bearing interest at four and one-half per cent per annum from the date of the testator's death could be taken. Plenary power for the adjustment and settlement of these values was also given in section 42 of the will.

The consummation of the sale on November 24, 1920, fully

approved and ratified by the Juilliard Musical Foundation, was a sale as of April 25, 1919, as directed by the will. The executors, in making the sale as of this date, followed the express limitation on their power of sale. No other sale was authorized.

The testator commanded his executors and trustees to treat the sale of the partnership interest and the mill stocks as a sale as of the date of his death. Both of these large factors in the administration of his estate were really fundamental and essential. All acts necessarily relating thereto must likewise relate back to the date of the testator's death.

After the death of the testator the surviving partners formed a joint stock company, which carried on the business. Thereafter the profits were earned by the new association and not by the old firm. The old partnership did not continue under article 13 of the partnership agreement. The estate held property rights in the assets and profits that accrued up to April 25, 1919, subject to liquidation. It was this interest which was sold as of April 25, 1919, to the surviving partners. The increase over the value of the testator's partnership holding was not due to any change in the capital value but was compensation for delay in payment. The delay was by agreement between the parties to the contract, and the delay was paid for by the purchasers by agreement also, and was ratified by the foundation.

It appears that the profits on the mill stocks since the testator's death have gone to the purchasers under the contract of sale.

The question presented for decision is the distribution of the income accruing between the date of the testator's death and the date of the organization of the corporation. Frederic A. Juilliard, Juilliard Musical Foundation, American Museum of Natural History, St. John's Guild in the City of New York and the appealing next of kin all claim title to the income which has accrued since the testator's death and down to the organization of the Juilliard Musical Foundation.

The learned surrogate held that Frederic A. Juilliard, the nephew, was entitled to all income that was " due and payable " up to the date of the organization of the Juilliard Musical Foundation, April 16, 1920, whether or not it had been actually reduced to possession by the executors and trustees; and that the attempted gift to the Juilliard Musical Foundation of the income which accrued prior to its organization was illegal, as it involved an accumulation for a term of years not dependent upon the minority of an infant. The learned surrogate further determined that as to income which had accrued but which on April 16, 1920, was not yet payable, the testator died intestate, and that such part of the income

passed to the testator's next of kin. (*Matter of Juilliard*, 117 Misc Rep. 642.)

It is urged by the Juilliard Musical Foundation that title to the entire residuary estate, under the 45th paragraph of the will, was conveyed to trustees of a charitable trust immediately upon the testator's death, and that there was no intervening non-charitable estate between the death of the testator and the incorporation of the Juilliard Musical Foundation, and that the incorporation was merely a change in instrumentality in carrying out an existing charitable trust. If this point be granted as a premise, the solution of the difficulties presented by the will would be very simple, because then there would be no illegal accumulation, for title immediately vested on the death of the testator. This contention cannot be maintained, according to my reading of the 45th paragraph. The particular charitable use for the aiding of students of music, the giving of musical entertainments and the instruction of the general public in musical arts, was entirely dependent upon the formation of the Juilliard Musical Foundation by incorporation, as directed under the will, during the lives of the testator's nephew, Frederic, and his surviving partner, Robert Westaway. The 45th paragraph specifically states, under subdivision (d), that " If for any reason the said corporation shall not be organized within the time specified, to wit, within the lives of said Frederic A. Juilliard and Robert Westaway, and the survivor of them, or if for any other reason the provisions of this clause shall be ineffectual, then I give, devise and bequeath the entire fund and estate referred to in this section of my will marked ' Forty-fifth ' unto the American Museum of Natural History and St. John's Guild in the City of New York in equal amounts." It would have been legal for the Juilliard Musical Foundation to be incorporated and organized at any time during the lives of Frederic A. Juilliard and Robert Westaway. This might have involved a considerable number of years. Besides, subdivision (d) further provides: " Until the organization of the corporation Juilliard Musical Foundation as hereinabove provided (which I trust may be accomplished without any appreciable delay after my death) and within the lifetime of said Frederic A Juilliard and Robert Westaway, and the survivor of them, I direct my said Executors and Trustees under this Will to pay over unto said Frederic A. Juilliard all income that may be actually received from the fund provided to be transferred to said corporation upon its organization, but that upon the organization of said corporation all distribution of income from said fund unto said Frederic A. Juilliard shall cease, and there shall be no apportionment to him of income partially or wholly earned, but not yet due and payable

at the time above stated." It seems clear, therefore, that there was a creation of an intermediate estate until the organization of the corporation, and that said organization could have been deferred legally during the lives of Frederic A. Juilliard and Robert Westaway. If the corporation of the Juilliard Musical Foundation was not formed, then certainly the charitable use, in so far as it affected the charity for the benefit of music, was defeated, because in that event it went to an entirely different charitable use, namely, to the American Museum of Natural History and St. John's Guild in the City of New York.

Under the 45th paragraph of the will the residuum of the estate is devised and bequeathed to the executors and trustees in trust, " giving and granting to my said Executors and Trustees the same rights and powers in connection with the *management and investment of said trust fund* as are conferred upon them by the section of this my Will, marked ' Forty-second.' "

The executors and trustees, under subdivision (b) of the 45th paragraph, are then directed: " as soon after my death as may be practicable, and within the lifetime of * * * Frederic A. Juilliard and * * * Robert Westaway, * * * to * * * cause to be incorporated * * * a corporation to be known as the ' Juilliard Musical Foundation.' " By subdivision (c) of the same paragraph the executors and trustees are directed, within the period of the two lives mentioned and upon the *organization* of the corporation, " to transfer and pay over unto the said corporation, the *entire capital of the said trust fund* created by this section of my Will, marked ' Forty-fifth.' " By the power given the trustees under the will as to *investment* of the trust fund and by the testator's gift of the *capital* of the trust fund, he clearly contemplated that there would necessarily be an interval between his death and the organization of the corporation, and that during such interval the principal should be made productive. The testator also differentiated between capital of the trust fund and income therefrom, because it is only the former that is expressly given to the corporation. The income is then disposed of by subdivision (d) of the same section, which reads as follows:

" Until the organization of the corporation Juilliard Musical Foundation as hereinabove provided (which I trust may be accomplished without any appreciable delay after my death) and within the lifetime of said Frederic A. Juilliard and Robert Westaway, and the survivor of them, I direct my said Executors and Trustees under this Will to pay over unto said Frederic A. Juilliard all income that may be actually received from the fund provided to be transferred to said corporation upon its organization, but

that upon the organization of said corporation all distribution of income from said fund unto said Frederic A. Juilliard shall cease, and there shall be no apportionment to him of income partially or wholly earned, but not yet due and payable at the time above stated.

" If for any reason the said corporation shall not be organized within the time specified, to wit, within the lives of said Frederic A. Juilliard and Robert Westaway, and the survivor of them, or if for any other reason the provisions of this clause shall be ineffectual, then I give, devise and bequeath the entire fund and estate referred to in this section of my will marked ' Forty-fifth ' unto the American Museum of Natural History and St. John's Guild in the City of New York in equal amounts."

The apparent intention of the testator, in subdivision (d) just quoted, was to dispose of all income accruing between the date of his death and the organization of the corporation. Clearly his intent was to divide it in some manner between his nephew and the foundation. The gift of some part of the income to the foundation is not in express terms, but there is a clear gift by implication. Upon the organization of the corporation " all distribution of income from said fund unto said Frederic A. Juilliard shall cease, and there shall be no apportionment to him of income partially or wholly earned, but not yet due and payable." By clear implication, then, the corporation was given the income partially or wholly earned but not yet due and payable. But the corporation was not in existence at the time of the testator's death, and was not in fact organized until April 16, 1920, nearly a year after the testator's death on April 25, 1919.

These facts as to the gift of income to the foundation are quite like the facts in the case of St. John v. Andrews Institute (191 N. Y. 254). In that case the testator, Andrews, devised and bequeathed to his executors in trust the residue of his estate to pay over the rents and profits to his wife during her life. Upon her death he bequeathed the residue in part to a corporation which he directed to be formed as soon as practicable after his decease. This corporation was to be organized for the purpose of establishing and maintaining a school for the free education of girls. The will further provided that if the wife should die before the testator, the gift to the corporation should take effect upon the testator's death. The testator and his wife perished in a fire, so that it could not be determined which of them was the survivor. Subsequent to the death of the testator, and more than three years thereafter, " The Andrews Institute for Girls " was incorporated as directed by the will. The court held that there was an implied

direction for the accumulation of income from the date of the
death of the testator to the incorporation of the Andrews Institute
for Girls, for the benefit of that corporation; that the direction
for accumulation was void because of the provisions of section 51
of the Real Property Law of 1896 (now Real Prop. Law of 1909,
§ 61, as amd. by Laws of 1915, chap. 670) and section 4 of the
Personal Property Law of 1897 (now Pers. Prop. Law of 1909, § 16,
as amd. by Laws of 1915, chap. 670); and that the directed
accumulation was not for the benefit of infants in being at the crea-
tion of the estate out of which the rents and profits were to arise.
(*Cochrane* v. *Schell*, 140 N. Y. 516; *Manice* v. *Manice*, 43 id. 303,
376; *Pray* v. *Hegeman*, 92 id. 508; *Thorn* v. *De Breteuil*, 179 id. 64;
*Hascall* v. *King*, 162 id. 134.)

The attempted gift of part of the income to the foundation,
" partially or wholly earned, but not yet due and payable " at
the time of the organization of the foundation, was, therefore, void.

The provisions making a gift to the nephew, Frederic, next
require construction.

The executors and trustees are directed to pay to the nephew
*until* the organization of the foundation " all income that may
be actually received from the fund provided to be transferred
to said corporation upon its organization, but that upon the
organization of said corporation all distribution of income from
said fund unto said Frederic A. Juilliard shall cease, and there
shall be no apportionment to him of income partially or wholly
earned, but not yet due and payable at the time above stated "
(April 16, 1920).

What is meant by income " actually received? " A literal con-
struction would mean income actually reduced to possession by
the executors and trustees. If this was what the testator intended,
there would have been no necessity for directing that there should
be no apportionment to the nephew of income partially or wholly
earned, but not yet due and payable. If the contract for the
liquidation of the partnership had been executed immediately
after the testator's death, and if interest on the partners' notes
had been actually paid to the trustees prior to the organization
of the corporation, it is clear that such income would belong to
the nephew. If, immediately after the death of the testator, the
contract for liquidation had been executed and the notes delivered
to the trustees, and the partners delayed paying the interest until
after the organization of the corporation, was it the testator's
intent that the interest should go to the corporation? Or would
the subsequent collection of interest, either by voluntary payment
or by action reduced to judgment, relate back to the time it was
**due and payable?**

In the case of *Cook* v. *McDowell* (52 N. J. Eq. 351) a testator gave the residue of his estate to six children, to be divided equally among them share and share alike, with the proviso that " in case any of my said children die *before receiving* their share leaving issue then I give, devise and bequeath to such issue the share the parent would have taken if living." All of the children survived the testator, and one died without issue before coming into actual possession of any part of the testator's estate. It was there held that the words " before receiving " were used in the sense of vesting in right rather than in the sense of being in actual possession, and that, therefore, the property passed under the will of the deceased child.

So in the case of *Allemannia Ins. Co.* v. *Firemen's Ins. Co.* (209 U. S. 326) the court construed the words " actually paid " in a contract of reinsurance to mean actually payable. This construction was perforce the nature of the contract, from which in turn the court inferred the intention of the parties. So the words " shall have received his or her share " were held to be the legal equivalent of " shall have become entitled to receive his or her share." (*Johnes* v. *Beers*, 57 Conn. 295.) And where there was a bequest in trust for a granddaughter of a testator, with direction to apply so much of the income or of the principal for the benefit of the granddaughter until she should attain the age of twenty-one years, and then to pay her the principal together with all accrued income if the trustees deemed it best, " *but should she die before receiving the same*, then this trust is to continue for the benefit of her lawful issue, if any, until they each shall reach twenty-five years of age," it was held that the estate was " received " at the moment when in contemplation of law she became entitled to receive it. (*Thompson* v. *Marshall*, 73 Conn. 89, 94.)

By the method of administration contemplated by the testator, the income was " actually received " when the trustees were legally " entitled to receive it."

The contract between the surviving partners and the executors and trustees, under the broad power given the latter by the will, made interest on the notes payable semi-annually for the first two years. This had the effect of making due before the organization of the foundation the sum of $321,823.87. There is no suggestion that this act of administration was done with any fraudulent intent to increase the nephew's share of income. It was in pursuance of the power granted the executors under paragraphs 41 and 42 of the will. It follows, therefore, that the court below was correct in ruling that Frederic A. Juilliard was entitled to the

income "due and payable" at the date of organization of the foundation.

As the will directed the payment of income to the nephew Frederic *until* the organization of the corporation, and upon the organization of the corporation the payment of income to him should cease, the court below was also correct in its ruling that decedent died intestate as to income partially or wholly earned, but not yet due and payable at the time of the organization of the corporation. (*St. John* v. *Andrews Institute, supra.*)

It is also urged that the foundation was "organized" when it was "incorporated" by special act of the Legislature on March 30, 1920, and that this date should prevail rather than the date of the organization meeting provided for in the special act. While the terms "organized" and "incorporated" are often used synonymously concerning the creation of a corporation, there is a difference between corporations created by a general act and those created by special act. The incorporators under a general act give their assent to incorporation in advance of actual incorporation, while incorporation under a special act is not deemed complete until formal organization, or assent inferred by the exercise of corporate acts under the special charter. (*Glymont Co.* v. *Toler*, 80 Md. 278; *Matter of Metropolitan Transit Co.*, 111 N. Y. 588, 603.)

The appellants American Museum of Natural History and St. John's Guild in the City of New York claim that the court below erred in not decreeing payment to them of all interest from the date of testator's death to the organization of the foundation. Their claims rest upon that part of paragraph 45, subdivision (d), of the will which reads as follows:

"If for any reason the said corporation shall not be organized within the time specified, to wit, within the lives of said Frederic A. Juilliard and Robert Westaway, and the survivor of them, or if for any other reason the provisions of this clause shall be ineffectual, then I give, devise and bequeath the entire fund and estate referred to in this section of my will marked 'Forty-fifth' unto the American Museum of Natural History and St. John's Guild in the City of New York in equal amounts."

By the express terms of this clause the only gift to the museum and to the guild is the entire residuary estate. Concededly neither can take as "persons presumptively entitled to the next eventual estate." (See Real Prop. Law of 1909, § 63, as amd. by Laws of 1916, chap. 364. See, also, Pers. Prop. Law of 1909, § 11.) The gift of the entire residuary estate was dependent upon the illegality of the entire disposition in paragraph 45 of the will.

I, therefore, recommend: Decree of the Surrogate's Court of Orange county affirmed, with costs to all parties appearing and filing briefs in this court, payable out of the estate.

KELLY, P. J., YOUNG and KAPPER, JJ., concur; MANNING, J., dissents upon the ground that in his opinion the intent of the testator, as evidenced by the will, was that the whole of the income should go to the nephew until the actual organization of the foundation; and is also of opinion that the evidence in the case does not warrant the application of the doctrine of intestacy.

Decree of the Surrogate's Court of Orange county affirmed, with costs to all parties appearing and filing briefs in this court, payable out of the estate.